Fernandez vs. Smith and Gormley.

## No. 10,708.

### L. H. FERNANDEZ VS. JAMES SMITH AND H. GORMLEY.

1. A purchaser of property at tax-sale who notifies the occupant of his purchase, and, on being informed that the tax has been paid and that the owner has the tax-receipt, repeatedly requests the latter to produce the receipt and makes all efforts to secure such production without avail, can not be held in damages for taking the proceedings authorized and directed by the statute to be put in possession. He is protected by the principles of *damnum absque injuria* and *volenti non fit injuria.*

2. But when, after the occupant is ejected, full evidence is exhibited to the purchaser of the payment of the tax for which the sale was made, with a demand for dismissal of the proceeding, the refusal of the purchaser, compelling the owner to resort to an injunction suit in order to protect the property and keeping her out of possession, places the purchaser in the wrong and makes him liable for all damages subsequently accruing.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

*Harry L. Edwards* for Plaintiff and Appellant:

1. A widow seeking to recover from a third person, or to maintain an action concerning property belonging to the community, should establish the marriage as conclusively as any other fact. Her capacity to stand in judgment is as essential a fact of proof as any other, especially when her right to sue has been put at issue by the pleadings. 15 An. 410.

2. The refusal of the judge *a quo* to give to the jury a special charge involving a matter of great import to the party on whose behalf the request is made, and where the charge relates materially to the defense, will be sufficient cause for the setting aside, on appeal, of the verdict.

3. Where a person proceeds in the usual way, under Act No. 82 of 1884, to obtain possession of property bought by him at tax sale, and his writ of possession is sued out in good faith, he is protected by the order of court, should the tax sale be illegal, from any damages caused by the ejectment to the party injured. Under no circumstances could more than actual damages be allowed; never vindictive damages. 35 An. 518; 15 An. 133.

4. When an injury would not have happened, except for the culpable negligence of the party injured, concurring with that of the other party, no action can be maintained. 34 An. 1086 and 180; 31 An. 154, 490; 5 Otto, U. S. 441.

*A. J. Lewis,* for Defendant and Appellee:

The verdict of the jury pronounced in such case, after patiently hearing the testimony from the lips of the witnesses before them, in a long and full trial of the cause, in the constant presence of the lower judge, and with his approval, will not be diminished. But this honorable court will even increase the damages allowed, when insufficient. 3 N. S. 151, 152; 4 An. 448; 17 An. 30, 50; 20 An. 455, 458; 30 An. 220; 41 An. 1125.

Fernandez vs. Smith and Gormley.

In assessing such damages, actual loss and expense incurred, attorney's fees, public scandal, mortification, anxiety of mind, etc., are all to be considered. McFee vs. R. R. Co. 42 An. 797; Hamilton vs. R. R. Co. 42 An. 829.

The opinion of the court was delivered by

FENNER, J. Under Act 82 of 1884, Fernandez purchased at a tax sale, made to enforce an alleged unpaid tax of 1871, a piece of property described in the tax deed as follows: " A certain lot of ground in the Third District of the city, in the square bounded by Spain, Mandeville, Villere. and Robertson streets, designated as lot — in square 615, said lot — measuring 32 feet on Spain street, by a depth of 128 feet * * *. Said property was duly assessed in the name of Henry Gormley·for the year 1871, and of which property James Smith is the present owner."·

There was in this square a lot, the title to which stood in the name of James Smith, which lot fronted on Spain street, though the dimensions given in the title were slightly different. James Smith had died, but his succession had not been opened, and the recorded title had not been changed. The property was then occupied, one-half by his widow, Mrs. Barbara Smith, and the other half by a tenant who leased from her.

Notwithstanding certain variances in description, he concluded, as we think not unnaturally, that this was the property covered by the tax sale and deed. It appears that, in the case of several other properties bought by Fernandez at this sale for the tax of 1871, the owners had produced their tax receipts.

Fernandez, therefore, through his counsel, wrote a letter notifying Mrs. Smith that he had bought the property at tax sale for the tax of 1871, and requesting that she call and see about it, and, if the tax of 1871 had been paid, to bring the receipt. Her son called and told him that the tax had been paid and his mother had the receipt, but he did not bring the receipt. Numerous efforts were made by Fernandez and his counsel to get the parties to show the tax receipt, and they were informed that, if they produced the receipt, they would not be troubled. We need not go into details as to this evidence; it satisfies us, that though they always claimed to have the receipt, they never exhibited it as requested. The following letter addressed to the counsel of Fernandez shows the spirit in which they acted:

"DEAR SIR: I wish to let you know that Mr. Smith is dead, and give you to understand that I have the State tax receipt for 1871, and all others, and if you wish to see it you call at 86 Urquhart street; Mr. George Smith will show them to you. Now you enter suit and when you get done, I will tend to you.

"Yours Dearly Friend,

"MRS. GEORGE SMITH, 86 Urquhart street."

In response to this letter, Fernandez called on George Smith, as requested, but failed to get a sight of the receipt. Fernandez says Smith told him, "May be he had the receipt and may be he did not; for him to enter suit, and after it was over he would attend to him on the outside." Smith denies this, and says he didn't show him the receipt, because he had returned it to his mother, and told him to go to her and see it. At all events he failed to get sight of the receipt.

We have weighed this evidence very carefully, and we are quite satisfied that the Smiths were in fault for not showing the tax receipt, which would certainly have obviated all further trouble.

Fernandez had nothing left but to resort to the judicial process provided by the Act 82 of 1884.

Section 4 of said act reads: "That all the sales under this act shall vest in the purchaser an absolute and perfect title to the property conveyed without redemption, and it shall be the duty of any court having jurisdiction of the value of the property sold, to issue an order to the sheriff, upon presentation of a duly certified copy of the deed, commanding him to forthwith seize the property described in said deed; and after three days' notice of such, to either the former owner or occupant of said property, the sheriff shall put the purchaser into actual possession of the property, unless enjoined by a court having jurisdiction."

Fernandez applied to the court in the manner prescribed, and on exhibition of his tax deed, the writ of possession was issued and due notice served on Mrs. Smith.

The law plainly indicates that the object of the three days' notice was to enable the defendant to avoid ejection by the proper proceeding. But Mrs. Smith waits in silence until she has been actually ejected. She is not shown to have exhibited her tax receipt even

to the sheriff's officers who ejected her, which might have delayed their action.

Up to this point, we think Fernandez was undoubtedly protected by the principles embodied in the maxims *damnum absque injuria* and *volenti non fit injuria.*

He acted under the warrant of the State and in the mode expressly directed by the State in the statute above quoted. He had taken every precaution and had given Mrs. Smith full warning and opportunity to save all trouble by the simple exhibition of the tax receipt. She disregarded the legal assertion of his rights. It is her own fault if she suffered thereby. The law can not justify a party having a perfect defence against a claim, of which the claimant is ignorant, in concealing the evidence of the defence when repeatedly called on to produce it, and then claiming damages when the claimant is driven to legal proceedings.

After she had been ejected from one-half the premises, however, Mrs. Smith consulted her lawyer, and placed in his hands the title deed and the tax receipts, including that of 1871, making up the clearest possible case that Fernandez had no right whatever against the property. These were exhibited and explained to Fernandez and his counsel, and the demand was made that the proceeding should be dismissed. It was the obvious duty of Fernandez to do so. He now assumed a position which placed him clearly and outrageously in the wrong. He demanded that Mrs. Smith should pay his costs and attorney's fees, which was utterly unwarrantable. He then required that she should sign a document relinquishing all claim for damages, to which he had not the slightest right. He then refused to dismiss the proceeding, and drove Mrs. Smith to the necessity of instituting this injunction proceeding in order to recover that part of her property from which she had been ejected, and to stop proceedings to eject her tenant from the other half, upon whom notice had been served. She remained out of her property for nearly a month, and was compelled to rent a house to live in. She might have been kept out until the termination of the suit had she not taken the responsibility of moving back, to which no opposition was made. Under the notice served on the tenant, the latter refused to pay her rent and the rent was lost.

The jury rightly considered that she was entitled to damages, but under the circumstances of this case, and considering her conduct

prior to the ejectment, already commented on, we think the allowance of $750 is excessive, and that $350 is ample to cover all her actual damage.

It is therefore adjudged and decreed that the verdict and judgment appealed from be amended by reducing the damages allowed to $350, and that as thus amended the same be now affirmed, appellee to pay costs of this appeal.